# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRUNSWICK CORPORATION, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.  1:16-cv-11414** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| MARK MCNABOLA, | ) | **Plaintiff Requests A Trial By Jury** |
| THE MCNABOLA LAW GROUP, P.C., | ) | |
| TATIANA AGEE, and | ) | |
| COOK COUNTY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Brunswick Corporation ("Brunswick"), brings this complaint against Defendants, Mark McNabola, The McNabola Law Group, P.C., Tatiana Agee, and Cook County, for their egregious actions that denied Brunswick its right to a fair trial by jury in the Circuit Court of Cook County, Law Division.  Defendants' actions on June 9, 2015 concealed a material jury question from Brunswick so that McNabola could settle a personal injury case for $25 million before the jury returned a verdict against his clients, Scot and Patricia Vandenberg.  McNabola manipulated information about a material jury question to which both sides were entitled for his own personal benefit.  This misconduct directly implicated the integrity of the judicial system in Cook County.  As a result of the combined effect of the actions of Defendants, Brunswick has been denied the justice that the jury in the underlying trial was ready to deliver to it: a complete defense verdict.

## NATURE OF THE ACTION

1.      This is a civil action for damages brought against Defendants, all of which are responsible for the fact that judgment was not entered on a defense jury verdict on June 9, 2015 in the case captioned *Vandenberg v. Brunswick Corporation, et al.*, Case No. 2010 L 3188 (Circuit Court of Cook County, Illinois), following a three-week trial.

2.      Co-conspirators, Scot and Patricia Vandenberg, had filed the lawsuit against Brunswick and Brunswick Boat Group following Scot Vandenberg's September 1, 2009 fall from a yacht manufactured by Brunswick. Brunswick Boat Group is division of Brunswick. On that day, September 1, 2009, Vandenberg was heavily intoxicated and fell from the top deck of the yacht in question sustaining an injury that rendered him quadriplegic. He subsequently filed suit against Brunswick and the owner of the yacht that had altered its design, RQM LLC ("RQM").

3.      After filing the lawsuit, the Vandenbergs retained McNabola from The McNabola Law Group, P.C. to serve as their lead trial counsel.

4.      In May 2015, the case proceeded to a jury trial in the Law Division of the Circuit Court of Cook County, Illinois. The case was tried before the Honorable Elizabeth M. Budzinski.

5.      Brunswick was the remaining defendant in that case when it proceeded to trial. RQM had settled prior to trial. Brunswick's theory of the case was that RQM was responsible for Vandenberg's injury because it altered the design of the yacht in question years after Brunswick had manufactured it, and had used the vessel to operate an unlicensed charter. Brunswick also argued that Vandenberg was at fault for his own injuries resulting from his fall on September 1, 2009. Because the case was tried under admiralty law, RQM was placed on the verdict form.

6.      On the afternoon of June 9, 2015, the jury began deliberations at approximately 2:30 p.m. Shortly thereafter, Charles Patitucci, a claims adjuster working on behalf of Brunswick's

2

insurer made a settlement offer of $25 million to McNabola. Patitucci and McNabola had discussed settlement prior to the closing arguments. Patitucci only discussed settlement with McNabola, who was the authorized attorney acting on behalf of the Vandenbergs. McNabola did not accept the settlement offer at that time.

7.     At 3:50 p.m., the jury presented a question asking whether it "could find fault with RQM without finding fault with Brunswick?" (*See* June 9, 2015 Jury Question, attached hereto as Exhibit 1.) The question was time stamped as having been sent at 3:50 p.m. and was signed by the jury foreman. Judge Budzinski instructed the court clerk assigned to her courtroom, Tatiana Agee, to call both sides and inform them there was a jury question and ask them to come to court to address the question.

8.     At 3:52 p.m., Agee called McNabola and divulged the substance of the jury question to him. McNabola told Agee that the answer to the question was "no," which was incorrect. McNabola further told Agee to "hold off" on doing anything because he was going to settle the case. As of this time, McNabola had not attempted to accept Brunswick's offer to settle the case.

9.     After learning the contents of the jury question, McNabola called defense counsel, John Patton, at 3:55 p.m. and left a message with his secretary stating that the jury was out. McNabola said nothing about the jury question, his knowledge of the jury question and his request to delay the proceedings. McNabola called Agee again and spoke with her at 4:01 p.m. At 4:02 p.m., McNabola spoke with Patton and asked for Patitucci. In this 4:02 p.m. phone call, Patton inquired about the message McNabola left with his secretary and asked McNabola whether it was still his understanding that the jury was deliberating. McNabola confirmed to Patton that the jury

3

was deliberating. McNabola again remained silent about how he knew the contents of the jury question and asked Agee to delay holding a hearing on the jury question.

10.     At 4:03 p.m., McNabola spoke with Patitucci and countered with demands for $30 million and $27.5 million, both of which Patitucci rejected. McNabola then offered $25 million to settle the case and Patitucci accepted. At no point in this conversation did McNabola tell Patitucci there was a jury question, that McNabola had learned of the contents of the jury question from Agee, and that he asked her to "hold off" on doing anything. Patitucci had full authority to revoke the $25 million offer and would have done so had he known that there was a pending jury question, the contents of the pending jury question, the fact that McNabola knew about a pending jury question and the contents of that question, or that McNabola had induced Agee to delay holding a hearing on the jury question so that he could settle the case.

11.     Between 4:10 and 4:15 p.m., McNabola called Judge Budzinski to advise her about the settlement. In that conversation, McNabola told Judge Budzinski that neither he nor the defense was interested in the jury question or anything more to do with the trial. McNabola made this statement before Agee called anyone representing the defense advising them that a jury question was even pending.

12.     At 4:18 p.m., McNabola spoke with Patton again advising him about the settlement. McNabola said nothing about the jury question, his knowledge of the jury question, or his conversations with Agee, including his request that she delay holding a hearing on the jury question. Nothing Patton said in this conversation indicated to McNabola that he knew that there was a jury question pending.

4

13.     Agee did not call Patton until 4:19 p.m., and in that conversation, she only told him that there was a question.  She did not tell Patton, as she did McNabola, the contents of the jury question.

14.     At 4:40 p.m., attorneys representing the Vandenbergs and Brunswick reconvened in Judge Budzinski's chambers.  Judge Budzinski asked why it took everyone so long to return after the jury presented its question.  Patton's partner, John Ouska, replied that representatives from the defense appeared as soon as they learned about the jury question.  Co-conspirator, Ruth Degnan, an associate of McNabola's, knew that McNabola had learned of the contents of the jury question approximately 40 minutes earlier, but said nothing to Judge Budzinski or representatives from Brunswick.  Judge Budzinski revealed the jury question to everyone and put the settlement on the record.  At that time, no one representing Brunswick or Judge Budzinski knew that McNabola had previously learned the contents of the jury question and asked Agee to "hold off" on doing anything.

15.     After putting the settlement on the record, Judge Budzinski answered the jury's question by advising it to refer to the jury instructions.  Judge Budzinski also allowed the jury to continue deliberating over the objection of McNabola and Degnan.  Within ten minutes, the jury signed Verdict Form B, which represented a defense verdict in favor of Brunswick.  (*See* Signed Verdict Form B, attached hereto as Exhibit 2.)  The jury was not aware of the settlement before it reached the verdict.

16.     Defendants engaged in their unlawful actions on June 9, 2015 in an attempt to prevent the jury from ruling against the Vandenbergs.  These unlawful actions denied Brunswick its right to a fair trial before a jury in an impartial tribunal.

**JURISDICTION AND VENUE**

17.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Constitution of the United States.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a).  This Court has jurisdiction over Brunswick's state law causes of action pursuant to the Court's supplemental jurisdiction, as codified by 28 U.S.C. § 1367(a).

18.     Venue is proper in this District under 28 U.S.C. § 1391(b).  The parties reside or formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**PARTIES**

19.     Plaintiff Brunswick Corporation is a corporation incorporated in Delaware with its headquarters in Lake Forest, Illinois.

20.     Defendant Mark McNabola is an attorney licensed to practice law in Illinois.  Upon information and belief, McNabola resides in the Northern District of Illinois.

21.     Defendant The McNabola Law Group, P.C. ("The McNabola Law Group") is a professional company incorporated in Illinois and located in Chicago, Illinois.  On June 9, 2015, the following attorneys worked at The McNabola Law Group: Mark McNabola, Edward McNabola, Karen Enright, Theodore Jennings, Ruth Degnan, and Terrence Nofsinger.

22.     Defendant Tatiana Agee was an employee of the Clerk of the Circuit Court of Cook County on June 9, 2015.  Upon information and belief, Agee resides in the Northern District of Illinois.  Agee is sued in her individual capacity and acted under color of law and in the scope of her employment in engaging in the actions described in this Complaint.

23.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of the Circuit Court of Cook County.  Cook County was the employer of Agee and is a necessary party to this lawsuit.

24.     Co-conspirator Ruth Degnan was employed as an associate of The McNabola Law Group on June 9, 2015.  Upon information and belief, Degnan resides in the Northern District of Illinois.

25.     Co-conspirator Terrance Nofsinger was employed as an associate of The McNabola Law Group on June 9, 2015.  Upon information and belief, Nofsinger resides in the Northern District of Illinois.

26.     Co-conspirator Scot Vandenberg was the plaintiff in the matter *Vandenberg v. Brunswick Corp.*, Case No. 2010 L 3188.  McNabola was Vandenberg's attorney on June 9, 2015.  Subsequent to that date, Vandenberg was represented by the law firms of Williams, Montgomery & John Ltd., Power, Rogers & Smith P.C., and Kralovec, Jambois & Schwartz in the matter of *Vandenberg v. Brunswick Corp.*, Case No. 2010 L 3188.  Upon information and belief, Vandenberg resides in the Northern District of Illinois.

27.     Co-conspirator Patricia Vandenberg was the plaintiff in the matter *Vandenberg v. Brunswick Corp.*, Case No. 2010 L 3188.  McNabola was Vandenberg's attorney on June 9, 2015.  Subsequent to that date, Vandenberg was represented by the law firms of Williams, Montgomery & John Ltd., Power, Rogers & Smith P.C., and Kralovec, Jambois & Schwartz in the matter of *Vandenberg v. Brunswick Corp.*, Case No. 2010 L 3188.  Upon information and belief, Vandenberg resides in the Northern District of Illinois.

7

## ALLEGATIONS OF FACT

### Background of the Underlying Case

28.     On March 12, 2010, Scot and Patricia Vandenberg filed a six-count complaint against RQM, Brunswick and Brunswick Boat Group.  According to that complaint, Vandenberg suffered injuries on September 1, 2009, after a fall on a yacht manufactured by Brunswick.  RQM owned the yacht and had modified its design subsequent to its manufacture, though it did not make certain modifications required by the U.S. Coast Guard in order to make its charter a lawful one.

29.     On October 10, 2012, the Vandenbergs voluntarily dismissed RQM from the lawsuit following a settlement.

30.     Prior to trial, Brunswick and the Vandenbergs had engaged in mediation and had settlement discussions, but were unsuccessful at reaching a settlement.  McNabola represented the Vandenbergs in connection with those settlement discussions.

31.     On May 15, 2015, the case proceeded to trial against Brunswick before Judge Budzinski.  Brunswick's position at trial was that there was nothing about the design or manufacture of the yacht that contributed to Vandenberg's injuries.

### The Underlying Case Proceeded to a Jury Trial in May and June 2015

32.     Throughout the trial, Brunswick argued that RQM, the empty-chair defendant, was at fault and that RQM and Vandenberg himself were at fault.  Brunswick argued at trial that RQM turned a personal yacht into a commercial yacht in violation of United States Coast Guard regulations.  Brunswick further argued that RQM was at fault for Vandenberg's injuries by having patrons congregate on the top portion of the yacht's deck in contravention of its intended design as a holding facility for a dinghy.  Brunswick further argued that the owners of RQM improperly

used the yacht's working deck by placing a music band on the deck and allowed patrons to congregate on the deck.

33.     Because the case was tried under maritime law, RQM was also placed on a verdict form provided to the jury.  Verdict Form A specifically listed RQM and the jury instructions permitted the jury to take RQM's fault into account when deciding the case.

34.     Closing arguments in the case took place on June 9, 2015.  Following the closing arguments, Judge Budzinski instructed the jury.  At approximately 2:30 p.m. on June 9, 2015, the jury began its deliberations.

35.     Shortly thereafter, Patitucci, a claims adjuster working on behalf of Brunswick's insurer, made a settlement offer of $25 million to McNabola.  Patitucci and McNabola had discussed settlement prior to the closing arguments.  Patitucci only discussed settlement with McNabola, who was the authorized attorney acting on behalf of the Vandenbergs.  McNabola did not accept the settlement offer at that time.

**The Jury Presented a Material Question at 3:50 p.m. on June 9, 2015**

36.     At 3:50 p.m., the jury presented a question asking whether it could "find fault with RQM, without finding fault with Brunswick?"  The question was time stamped as having been sent at 3:50 p.m. and was signed by the jury foreman. Judge Budzinski instructed Agee to call the attorneys for both parties and advise them that there was a jury question pending.

37.     Given that Brunswick's position at trial was that RQM's negligence was the cause of Vandenberg's injuries, the jury question clearly indicated that the jury accepted Brunswick's theory and placed the fault with RQM.

38.     At 3:52 p.m., the court clerk, Agee, called McNabola and divulged the substance of the jury question to him.  McNabola told Agee that the answer to the question was "no," which

was incorrect. McNabola further told Agee to "hold off" on doing anything because he was going to settle the case. As of this time, McNabola had not attempted to accept Brunswick's offer to settle the case.

39. After learning the contents of the jury question, McNabola called defense counsel, Patton, at 3:55 p.m. and left a message with his secretary stating that the jury was out. McNabola again said nothing about the jury question, his knowledge of the jury question and his request to delay the proceedings. McNabola called Agee again and spoke with her at 4:01 p.m.

40. At 4:02 p.m., McNabola spoke with Patton and asked for Patitucci. In the 4:02 p.m. phone call that McNabola had with Patton, Patton told McNabola that he received an email regarding McNabola's call to his office at 3:55 p.m. that indicated that a "jury is out" and inquired of McNabola whether that was his understanding. McNabola confirmed to Patton in this 4:02 p.m. phone call that the jury was still deliberating.

41. At 4:03 p.m., McNabola spoke with Patitucci and countered with demands for $30 million and $27.5 million, both of which Patitucci rejected. McNabola then offered $25 million to settle the case and Patitucci accepted. At no point in this conversation did McNabola tell Patitucci that he learned of the contents of the jury question from Agee and that he asked her to "hold off" on doing anything.

42. Neither Patton nor Patitucci had any idea that there was a jury question that had been pending for close to 15 minutes by that point in time. After speaking with Patitucci, Patton went to his partner Ouska's office to advise him of the settlement, to ask him to go to the courthouse to put the settlement on the record, and to ask Judge Budzinski to allow the jury to continue to deliberate and reach a verdict.

Case: 1:16-cv-11414 Document #: 1 Filed: 12/16/16 Page 11 of 44 PageID #:11


43.     Between 4:10 and 4:15 p.m., McNabola called Judge Budzinski to advise her about the settlement.  In that conversation, McNabola told Judge Budzinski that neither he nor the defense were interested in the jury question or anything more to do with the trial.  McNabola made this statement to Judge Budzinski before Agee called anyone representing the defense advising them that a jury question was even pending.

44.     After speaking with Judge Budzinski, McNabola called Patton at approximately 4:18 p.m.  During that call, McNabola advised that the case had settled and that he was sending his associate, Degnan, to the courthouse to put the settlement on the record.  Patton explained that he wanted the jury to keep deliberating and to reach a verdict, acknowledging that the settlement would still control any verdict.  At no point during this call did McNabola tell Patton that there was a jury question pending and that he knew the contents of that question.

45.     It was not until 4:19 p.m. that Agee called Patton to inform him of the jury question.  During that conversation, Agee only told Patton that there was a question.  She did not tell him, as she told McNabola, the contents of the jury question.  Patton believed that the jury question had just been presented when Agee called.

46.     At 4:37 p.m., Patton received a call from Agee, who then connected him to Judge Budzinski.  Judge Budzinski asked about the continued jury deliberations.

47.     At 4:40 p.m., attorneys representing the Vandenbergs and Brunswick reconvened in Judge Budzinski's chambers.  Judge Budzinski asked why it took everyone so long to return after the jury presented its question.  Ouska, present on behalf of Brunswick, replied that representatives from Brunswick appeared as soon as they learned about the jury question.  Degnan knew that McNabola had learned of the contents of the jury question approximately 40 minutes earlier, but said nothing to Judge Budzinski or the defense.  Nofsinger was present in Judge

11

Budzinski's chambers with Degnan at this time. McNabola did not come back to the courthouse. Judge Budzinski revealed the jury question to everyone and put the settlement on the record.

48.     At the time the settlement was placed on the record, no one representing Brunswick knew that McNabola had learned of the existence of the jury question 27 minutes before Brunswick, learned the contents of the jury question at that time, and asked Agee to "hold off" on doing anything. If anyone representing Brunswick had known any of these facts before the settlement was placed on the record on June 9, 2015, they would have objected to the settlement.

### The Jury, Unaware of the Settlement, Continued Its Deliberations and Returned a Defense Verdict

49.     After putting the settlement on the record, Judge Budzinski answered the jury's question by advising it to refer to the jury instructions. Judge Budzinski also allowed the jury to continue deliberating over the objection of McNabola and Degnan.

50.     Within ten minutes, at approximately 5:00 p.m., the jury signed Verdict Form B, which represented a defense verdict in favor of Brunswick. The jury remained sequestered in the jury room and was not aware of the settlement before it reached the verdict and signed Verdict Form B.

### Brunswick's Lead Counsel Returned to the Courthouse after the Jury Returned Its Verdict

51.     At about the same time, Patton arrived back in Judge Budzinski's courtroom. When Patton arrived at the courtroom, he learned that the jury had returned a verdict for Brunswick. Patton also learned that the jury question had been presented at 3:50 p.m., which was 27 minutes before Agee first tried to reach him at 4:19 p.m.

52.     During this time, Judge Budzinski was still in the jury room with the jurors. When Judge Budzinski emerged from the jury room, Patton told her that the settlement occurred without

12

him ever knowing that there was a jury question. Patton showed Judge Budzinski his cell phone, indicating that the first call he received from her chambers was at 4:19 p.m. At no point during this conversation in the courtroom did Degnan, who was also present, advise anyone that she knew that McNabola had received a call from Agee before he called Patitucci to settle the case.

53.     Patton drafted an order asking that it reflect that the jury returned a verdict for the defense. Thereafter, at approximately 5:15 p.m., Patton and Degnan returned to Judge Budzinski's chambers. At that time, Patton learned from Judge Budzinski that McNabola spoke with Agee about the jury question before the case had been settled. Judge Budzinski refused to enter Patton's proposed order reflecting that the jury had found for the defense.

## Aftermath of June 9, 2015

54.     The following morning, on June 10, 2015, Patton sent an email to Judge Budzinski indicating that he had not been notified of the jury question until 4:19 p.m., after the settlement had been reached. Patton further wrote that McNabola had called his office at 3:55 p.m. trying to reach Patitucci to negotiate a settlement.

55.     On June 10, 2015, Brunswick also filed a Motion for an Evidentiary Hearing. Brunswick requested the opportunity to examine Agee and McNabola under oath about what had occurred the previous day.

56.     On June 12, 2015, Brunswick filed its Motion to Vacate the Settlement Agreement, to Enter Judgment on the Jury Verdict, and for Other Relief.

57.     On June 15, 2015, Judge Budzinski entered a Memorandum of the Court. (*See* June 15, 2015 Memorandum of the Court, attached hereto as Exhibit 3.) The Memorandum disclosed that McNabola told Judge Budzinski "something to the effect that since the case was settled that neither he nor the defendant were interested in the contents of the jury note or anything more to do

13

with the trial." The Memorandum further indicated that after asking Agee whether she shared the contents of the jury question with McNabola, Agee responded that she had not and acknowledged that McNabola asked her to "'hold off' or something to that effect." Agee further stated that she called Patton and McNabola at the same time. Finally, the Memorandum recounted Judge Budzinski's June 10, 2015 conversation with Brook Reynolds, one of Judge Budzinski's judicial externs. Reynolds told Judge Budzinski that she overheard Agee reveal the contents of the jury question to McNabola and that McNabola suggested to Agee that the answer to the question should be "no."

58.     On June 15, 2015, Judge Budzinski also entered a protective order that precluded any of the parties from speaking with court staff, which included Agee, Reynolds, and the sheriff's deputy assigned to her courtroom.

59.     On June 16, 2015, The McNabola Law Group filed a response to Brunswick's Motion to Vacate the Settlement Agreement, to Enter Judgment on the Jury Verdict, and for Other Relief. The response, which was signed by McNabola, indicated that McNabola received a phone call from Agee at approximately 3:50 to 3:55 p.m. and that she advised that the jury had sent out a question. The response did not mention that Agee disclosed the contents of the jury question to McNabola during that phone call. The response also did not mention that McNabola asked Agee to delay having a hearing on the jury question. The response also opposed Brunswick's request for an evidentiary hearing.

60.     On June 26, 2015, C. Barry Montgomery and lawyers from the firm of Williams, Montgomery & John Ltd. filed an appearance on behalf of the Vandenbergs. Montgomery and lawyers from his firm served as co-counsel for the Vandenbergs with McNabola.

14

## October 2015 Evidentiary Hearing

61.     On August 11, 2015, Presiding Judge James Flannery transferred the matter to Judge Daniel Lynch following Judge Budzinski's recusal from the case.

62.     On September 1, 2015, Judge Lynch granted Brunswick's Motion for an Evidentiary Hearing over the Vandenbergs' objection.  Judge Lynch granted Brunswick's request to subpoena phone records for Judge Budzinski's chambers and McNabola.  Up until this point, Brunswick was not able to issue any subpoenas or seek any discovery.  Brunswick was only able to subpoena phone records for McNabola for the dates of June 9, 2015 and June 10, 2015. Brunswick subsequently received Degnan's phone records for those dates as well.  Brunswick only received telephone records for Agee's courthouse telephone line for the date of June 9, 2015.

63.     On September 16, 2016, Brunswick filed a motion seeking to lift the protective order entered by Judge Budzinski on June 15, 2015.  Judge Lynch denied that motion on September 23, 2015, and Brunswick was not able to speak with any court staff or employees before the evidentiary hearing.

64.     The evidentiary hearing lasted for four days in October 2015.  (*See* October 15, 2015 Transcript (attached hereto as Exhibit 4); October 16, 2015 Transcript (Exhibit 5); October 26, 2015 A.M. Transcript (Exhibit 6); October 26, 2015 P.M. Transcript (Exhibit 7); and October 27, 2015 Transcript (Exhibit 8).)   During the hearing, Patton, Patitucci, Agee, Reynolds, McNabola, Degnan, and the Vandenbergs testified.

65.     During the evidentiary hearing, McNabola admitted that Agee divulged the substance of the jury question to him during the 3:52 p.m. phone call.  This testimony occurred on October 26, 2015.  This was the first time that McNabola acknowledged that Agee had divulged

the substance of the jury question to him.  McNabola further admitted that he requested that Agee delay the normal procedure of holding a conference on the jury question.

66.     McNabola also acknowledged that the jury question pertained to the merits of the case and testified that in his experience, when a jury presents a question, the majority of the time both sides return to the courthouse together soon thereafter.  Further, as an officer of the court, McNabola understood that an attorney should not speak with members of the judge's staff about substantive issues without the other side being present or knowing about the conversation. McNabola understood that the rules of the Circuit Court of Cook County barred such conversations.

67.     According to McNabola's testimony at the evidentiary hearing, he tried reaching Agee at 3:59 p.m., but did not speak with her when he placed that phone call.  Agee called McNabola back at 4:01 p.m., and told him that Judge Budzinski requested that the parties return to court.  McNabola further testified that he was on his way back to the courthouse when he received a 4:02 p.m. call from Patton.  McNabola never told Patton or Patitucci in the subsequent phone calls on the afternoon of June 9, 2015 that he spoke with Agee at 4:01 p.m. and was purportedly on his way back to the courthouse.

68.     McNabola further testified at the evidentiary hearing that neither Patton nor Patitucci said anything indicating that they knew about the jury question when McNabola spoke with them at 4:02 p.m., 4:03 p.m., and 4:18 p.m.

69.     McNabola also testified at the evidentiary hearing that he called and spoke with Agee in the weeks following June 9, 2015 about what had occurred that afternoon.  Agee also confirmed that she spoke with McNabola following the events of June 9, 2015.

70.     During the evidentiary hearing, Reynolds testified that she was sitting in Judge Budzinski's antechambers when Agee placed the 3:52 p.m. phone call to McNabola. Reynolds testified that Agee spoke in a lowered and hushed voice and revealed the contents of the jury question to McNabola. Reynolds testified that she recalled Agee telling McNabola that the jury question inquired whether it could put 100% of the fault on RQM and zero percent on Brunswick.

71.     After Agee hung up the phone with McNabola, Agee spoke to Reynolds. Reynolds testified that Agee told her that McNabola said that the answer to the question was "definitely no." Agee further told Reynolds that she told McNabola the contents of the jury question because she liked "to give the plaintiffs . . . a little more of an opportunity to kind of settle or figure this out before the defense." Reynolds testified that Agee told her that Agee liked to "give the plaintiffs an advantage."

72.     Reynolds also recounted that Agee told her that McNabola told Agee to "hold off" and not to "do anything right now" because he was going to try to settle the case. McNabola testified that he had asked Agee if the court would allow him to "hold off for a couple of minutes to come over there because I'm working on settling the case."

73.     Reynolds further testified that Agee inquired of Judge Budzinski about whether the parties could have more time before they came to court, because according to McNabola, the case might settle. In response, Judge Budzinski indicated that it was fine so long as Patton and the defense were aware of what was taking place. At this time, however, Agee had not yet called Patton or any representative of the defense.

74.     Reynolds further testified that Judge Budzinski inquired why it was taking so long for both sides to return to the courthouse in light of the jury question. Reynolds further testified

17

that Judge Budzinski found it odd that McNabola did not want to know about the jury question after he called chambers advising of the settlement.

75.     McNabola's associate, Degnan, also testified during the evidentiary hearing. She stated she was present in McNabola's office when Agee first called McNabola. After this call, Degnan recalled that McNabola told her that there was a question pending and that it related to allocating fault. Degnan was also aware that McNabola had asked Agee to delay holding a hearing on the jury question so that he could settle the case. Degnan testified that she presumed that the defense also knew about the question because, in her experience, the court provides such information to both sides.

76.     Degnan was also in McNabola's office when he spoke with Patton at 4:18 p.m. informing him of the settlement. McNabola asked Degnan to go back to court to put the settlement on the record.

77.     Patitucci testified that McNabola called him at 4:03 p.m. and indicated that his clients were willing to accept $30 million to settle. Patitucci advised that he did not have authority to settle for $30 million and that he would need to seek approval, but would recommend against settling for that amount. McNabola then offered $27.5 million to settle the case and Patitucci again stated that he did not have authority to settle at that amount. Patitucci understood that the $30 million and $27.5 offers from McNabola represented counteroffers. McNabola then asked if the $25 million included structured payments, and after Patitucci confirmed that it did, McNabola stated that he would accept the $25 million settlement. McNabola inquired if payment could be made within 30 days, to which Patitucci responded no, and Patitucci then further advised that both he and McNabola sit down and work out the rest of the terms. McNabola quickly ended the call without discussing the rest of the terms of the settlement agreement.

78.     Further, Patitucci stated that if he knew the existence of the jury note in question, its contents, McNabola's knowledge of both, or that McNabola asked Agee to delay holding a hearing on the jury question, he would not have agreed to settle the case because the note suggested the jury would render a verdict for the defense.  Patitucci additionally testified that he had the authority to rescind the settlement agreement, which testimony was deemed to be credible and true by Judge Lynch.

79.     At no time during McNabola's phone conversations with Patitucci or Patton did McNabola mention that a jury note was pending.  McNabola also acknowledged that there was nothing that Patitucci or Patton said during the phone calls McNabola had with them at 4:02 p.m., 4:03 p.m., and 4:18 p.m. that indicated that they knew about the jury question, McNabola's knowledge of the jury question, or McNabola's request to delay holding a hearing on the jury question so that he could settle the case.

80.     In the 4:02 p.m. phone call that McNabola had with Patton, Patton told McNabola that he received an email regarding McNabola's call to his office at 3:55 p.m. that indicated that a "jury is out" and inquired of McNabola whether that was his understanding.  McNabola confirmed to Patton in this 4:02 p.m. phone call that the jury was still deliberating.

81.     Kimbley Kearney, an attorney for Brunswick during the underlying trial, also testified at the evidentiary hearing.  Kearney testified that at the time the settlement was placed on the record at 4:40 p.m. on June 9, 2015, no one there on behalf of Brunswick knew that McNabola learned about the contents of the jury question from Agee and that Agee had waited to call Brunswick for 27 minutes after her first conversation with McNabola.  Kearney testified that representatives from Brunswick would have objected to the settlement at that time if they were privy to Agee and McNabola's conversations and the fact that Agee waited to call representatives

from Brunswick 27 minutes after she first spoke with McNabola. Representatives from Brunswick believed that they learned the contents of the jury question at the same time in Judge Budzinski's chambers as did the lawyers for the Vandenbergs. Representatives from Brunswick did not know that Agee had disclosed the contents of the jury question to McNabola almost one hour earlier, that Agee had delayed calling Brunswick at McNabola's suggestion, and that McNabola advised Judge Budzinski that Brunswick was not interested in the jury question before they even learned of its existence.

82. Scot and Patricia Vandenberg also testified during the evidentiary hearing in support of enforcing the settlement agreement. Scot Vandenberg testified that after the trial, the Vandenbergs and McNabola returned to McNabola's office to discuss Patitucci's initial $25 million settlement offer. They both testified that they authorized McNabola to take that offer. The Vandenbergs also attended every day of the evidentiary hearing. Scot Vandenberg acknowledged that he was present in court and heard all of the testimony regarding how McNabola concealed a jury question from Brunswick to effectuate a $25 million settlement on his behalf.

83. Agee also testified during the evidentiary hearing, and denied telling McNabola the contents of the jury question. She also testified that her delay in calling Patton occurred because she was assisting a docket clerk with a filing.

84. The docket clerk testified at the evidentiary hearing. He testified that the filing with Agee took approximately five to ten minutes and that he had returned to his office by 4:07 p.m. on June 9, 2015. He also testified that it was an approximately ten minute walk from the courthouse to his office. These facts clearly refute Agee's proffered explanation for her delay in contacting Brunswick about the jury note.

**January 19, 2016 Ruling**

85.     On January 19, 2016, Judge Lynch issued an oral ruling, vacating the $25 million settlement.  (*See* January 19, 2016 Transcript, attached hereto as Exhibit 9.)  Judge Lynch granted Brunswick's request for vacatur on its claim of fraud in the inducement of the $25 million settlement agreement.  Judge Lynch additionally granted the relief and vacated the settlement on the basis of unilateral mistake.

86.     In support of the ruling, Judge Lynch found that Agee and McNabola engaged in an improper *ex parte* communication when Agee disclosed the contents of the jury question and that Brunswick was unaware of the existence and contents of the jury note, which contained a question material to the trial, when it settled the case.  Judge Lynch further found that once the jury question came out, the parties had an ongoing duty to supplement and update discovery as information became available, and that McNabola should have disclosed his knowledge of the question and its contents.

87.     Based on the record, which included limited discovery and Agee's testimony wherein she denied even divulging the substance of the jury question to McNabola and further denied failing to promptly call representatives for Brunswick about the jury question, Judge Lynch ruled that McNabola and Agee engaged in parallel conduct on June 9, 2015 and did not find that the evidence during the hearing demonstrated that an agreement existed between the two on June 9, 2015.

88.     Judge Lynch also indicated that lawyers, as officers of the court, have a special obligation to protect a tribunal against criminal or fraudulent conduct.

89.     During the January 19, 2016 ruling, Judge Lynch did not rule on Brunswick's request for entry of judgment on the verdict.

21

90.     In chambers following the January 19, 2016 ruling, Judge Lynch apprised both counsel for Brunswick and counsel for the Vandenbergs that he was obligated to refer the matter to the attention of law enforcement and inquired whether counsel for Brunswick could provide relevant information to the Cook County State's Attorney's Office. Counsel for Brunswick agreed to make the referral at Judge Lynch's request. Counsel for the Vandenbergs was present for this conversation.

## Jury Recall Hearing

91.     On February 1, 2016, Judge Lynch ruled that he would reconstitute the jury to make a complete record of what occurred on June 9, 2015, and address concerns raised by the Vandenbergs that they had lost their opportunity to have the verdict announced in open court and to poll the jury.

92.     On February 22, 2016, Judge Lynch reassembled the jury and placed the jurors under oath. (*See* February 22, 2016 Transcript, attached hereto as Exhibit 10.) The jury foreman confirmed that the jury had reached a unanimous verdict on June 9, 2015, which was in favor of Brunswick and against the Vandenbergs. The jury foreman identified the executed version of Verdict Form B as the jury's unanimous verdict and noted that the jury did not sign any other forms.

93.     All of the jurors agreed with the jury foreman that the verdict against the Vandenbergs was unanimous and that they all signed Verdict Form B, and not any other verdict forms. The jurors manifested their assent by initialing next to their signatures on Verdict Form B. (*See* Signed and Initialed Verdict Form B, attached hereto as Exhibit 11.)

94.     The jurors further confirmed that they executed Verdict Form B and arrived at their verdict before learning that the case had settled.

95.     Thereafter, Judge Lynch announced in open court the jury's unanimous finding, which stated that "We, the jury, find against Scot and Patricia Vandenberg."  Judge Lynch then polled the jury, questioning each juror as to whether the verdict announced in open court was the verdict that he or she reached in the jury room on June 9, 2015, at the end of the deliberations, and each juror responded affirmatively that the verdict embodied in signed Verdict Form B represented his or her verdict reached on June 9, 2015.

96.     Additionally, each juror stated that had Judge Budzinski brought the jury into open court and asked whether the verdict embodied in Verdict Form B was their individual verdict on June 9, 2015, they would have responded affirmatively and announced their verdict against the Vandenbergs. Each juror also confirmed that there was nothing between the time when their deliberations ended and February 22, 2016 that affected or influenced their ability to answer the Court's questions about their verdict.

97.     Following the hearing on February 22, 2016, Judge Lynch requested that the parties file supplemental briefs regarding Brunswick's request to enter judgment on the jury verdict.  The supplemental briefs were due on March 9, 2016.

**The Vandenbergs Hired New Counsel**

98.     On March 8, 2016, the Vandenbergs hired new counsel from Power, Rogers & Smith P.C. and Kralovec, Jambois, and Schwartz who were granted leave to file substitute appearances on behalf of the Vandenbergs over Brunswick's objection.  Judge Lynch vacated the due date for the supplemental briefs and set a status hearing for March 21, 2016.

99.     On March 9, 2016, the Vandenbergs' new counsel sent a letter to Patitucci attempting to accept the offer to settle the case for $25 million.  On March 15, 2016 and March 18, 2016, the Vandenbergs' new counsel sought to reopen discovery and depose Judge Budzinski

and other individuals who testified at the evidentiary hearing. The Vandenbergs' new counsel argued that they were unrepresented at the evidentiary hearing because Montgomery was McNabola's personal attorney.

100. Brunswick opposed all of these requests for additional discovery. On March 21, 2016, Judge Lynch denied the requests. Over Brunswick's objection, Judge Lynch provided the Vandenbergs' new counsel an extension to April 18, 2016 to file their supplemental brief regarding Brunswick's request to enter judgment on the jury verdict.

101. On April 18, 2016, Brunswick and the Vandenbergs filed supplemental briefs on Brunswick's request to enter judgment on the jury verdict. On April 18, 2016, the Vandenbergs also filed a motion to enforce the settlement agreement that Judge Lynch had previously vacated. The Vandenbergs argued that they wanted to accept the settlement agreement and that McNabola's misconduct could not be attributed to them to prevent enforcement of that settlement agreement.

102. On April 25, 2016, Judge Lynch heard oral arguments on the parties' supplemental briefs on entering judgment on the jury verdict and the Vandenbergs' request to enforce the settlement agreement.

103. On April 25, 2016, following oral argument, Judge Lynch again raised the referral of this matter to law enforcement. At Judge Lynch's request, counsel for Brunswick indicated that it would send copies of the transcripts from the evidentiary hearing and the parties briefing to the Cook County State's Attorney's Office. McNabola had counsel present in the courtroom that day.

104. On May 6, 2016, counsel for Brunswick sent a cover letter summarizing the evidence and these materials to the Cook County State's Attorney's Office. On May 20, 2016, counsel for Brunswick provided the cover letter to counsel for the Vandenbergs and counsel for McNabola.

105.    On May 9, 2016, McNabola filed a petition to intervene in the case.  McNabola argued that no one was representing his interests.  Although the Vandenbergs' counsel had previously argued that McNabola had Montgomery acting as his personal lawyer during that hearing, they took no position on McNabola's intervention request.  Brunswick opposed the request.  On May 11, 2016, after hearing oral argument, Judge Lynch denied McNabola's petition to intervene as untimely.

### Judge Lynch Entered Judgment on the Jury Verdict in Favor of Brunswick

106.    On May 19, 2016, Judge Lynch entered judgment on the jury's unanimous June 9, 2015 verdict. (*See* May 19, 2016 Transcript, attached hereto as Exhibit 12.)  After fully considering the parties' arguments, Judge Lynch ruled that due process required that judgment be entered on the jury verdict in favor of Brunswick.  Judge Lynch also denied the Vandenbergs' motion to enforce the settlement agreement.

107.    Judge Lynch issued an order effectuating that ruling on May 26, 2016.

108.    Judge Lynch permitted the Vandenbergs to file a post-trial motion.  On June 24, 2016, the Vandenbergs filed a motion for disqualification arguing that Judge Lynch was biased against McNabola and that bias tainted his rulings.  The Vandenbergs filed a post-trial motion on June 27, 2016.  Brunswick filed a response to both motions and the motions were fully briefed by August 31, 2016.

109.    On September 23, 2016, Judge Lynch denied the Vandenbergs' motion for disqualification and then recused himself from this matter.  Judge Lynch did not provide a reason for his recusal.

110.     After the case was reassigned, the Vandenbergs raised all of the previous arguments that Judge Lynch had rejected.  Brunswick was forced to file responses and reargue all of the same arguments again that the Vandenbergs and McNabola raised before Judge Lynch.

111.     After the case was reassigned, McNabola also filed another petition to intervene that raised the previous arguments that Judge Lynch had rejected.  McNabola also included an affidavit from Montgomery indicating that he was counsel for the Vandenbergs during the evidentiary hearing.  This time, the Vandenbergs opposed the request for intervention and again argued that Montgomery was not their attorney at the evidentiary hearing despite the fact that they attended the evidentiary hearing and heard Montgomery and lawyers from his firm represent that they represented the Vandenbergs.  The second request for intervention was ultimately denied on December 7, 2016.

112.     As of the filing of this lawsuit, the Vandenbergs' post-trial motion remains pending in the Circuit Court of Cook County, Law Division.

### The Effects of Defendants' and Co-Conspirators' Actions on Brunswick

113.     As a result of the misconduct that occurred on June 9, 2015, Brunswick has incurred substantial legal fees and expenses.  Brunswick has spent the past 18 months litigating issues pertaining to Defendants' misconduct that occurred on June 9, 2015.  Absent that misconduct, this case would have been over on June 9, 2015 after the jury indicated that it found for Brunswick.

114.     All of the actions of Defendants, and their named conspirators, as set forth above, including concealing the existence of a material jury question so that McNabola could effectuate a settlement for $25 million and then opposing Brunswick's efforts to find out the truth about what occurred on June 9, 2015, were done jointly, with the intent of injuring Brunswick.  These actions violated Brunswick's constitutional rights, particularly, its right to due process of law.

## Count I –Agee

### (42 U.S.C. § 1983 – Denial of Due Process of Law)

115.    Each paragraph of this Complaint is incorporated herein.

116.    As a civil litigant, Brunswick had a due process right under the Fourteenth Amendment to the United States Constitution to fair trial by jury.

117.    On June 9, 2015, Agee was an employee of the Clerk of the Circuit Court of Cook County acting under color of law and within the scope of her employment.

118.    Agee's actions in disclosing the contents of a material jury question to McNabola so that he could effectuate a settlement before Agee disclosed the existence of the question to Brunswick denied Brunswick its constitutional right to due process of law.

119.    Agee called McNabola at 3:52 p.m. on June 9, 2015 and told him the substance of the jury question. Agee did not attempt to even contact representatives for Brunswick until 4:19 p.m. on June 9, 2015, and only then told them that a jury question was pending. By that time, McNabola had settled the case for $25 million after concealing the existence of the jury question from Brunswick.

120.    Reynolds further testified at the evidentiary hearing that Agee disclosed the contents of the jury question to McNabola because Agee liked to give plaintiffs "an advantage" and wanted to provide plaintiffs with "a little more of an opportunity" to settle before the defense.

121.    If Agee had disclosed the existence of the jury question to representatives of both the Vandenbergs and Brunswick as she was required to do, both sides would have learned of the jury question simultaneously. If Agee had followed proper protocol, McNabola would not have gained an unfair advantage on June 9, 2015.

27

122.    As demonstrated by the jury's execution of Verdict Form B on June 9, 2015 and during the jury recall hearing on February 22, 2016, the jury was ready to find for Brunswick on June 9, 2015 and that was what would have occurred absent Agee's improper actions.

123.    The misconduct in this Count violated Brunswick's constitutional right to a fair jury trial in an impartial tribunal guaranteed to all litigants by the Fourteenth Amendment.

124.    The misconduct in this Count violated Brunswick's constitutional right to due process of law because it was deprived of having judgment entered on the jury verdict on June 9, 2015 after the jury returned a defense verdict.

125.    The misconduct described in this Count was undertaken intentionally, with malice and indifference to Brunswick's clearly established constitutional rights.

126.    As a result of Agee's improper actions, Brunswick has suffered and continues to suffer harm in that it has had to pursue a post-trial remedy in the Circuit Court of Cook County for over 18 months.  Absent the due process violation, this case would have concluded with a jury verdict in favor of Brunswick.

## Count II – Agee and McNabola

### (42 U.S.C. § 1983 – Conspiracy to Deny Due Process of Law)

127.    Each paragraph of this Complaint is incorporated herein.

128.    As a civil litigant, Brunswick had a due process right under the Fourteenth Amendment to the United States Constitution to fair trial by jury.

129.    On June 9, 2015, Agee was an employee of the Clerk of the Circuit Court of Cook County acting under color of law and within the scope of her employment.

130.    Agee's actions in disclosing the contents of a material jury question to McNabola so that he could effectuate a settlement before Agee disclosed the existence of the question to

Brunswick denied Brunswick its constitutional right to due process of law. Agee and McNabola conspired to withhold information about the jury question from representatives of Brunswick so that McNabola could settle the case before the jury returned a defense verdict, an event which the jury's question foreshadowed.

131.    Agee did not call Brunswick for 27 minutes after disclosing the contents of the jury question to McNabola because he induced her to "hold off" contacting Brunswick so that he could effectuate the settlement of $25 million. It is undisputed that Agee did eventually call Brunswick a full 27 minutes later only after first speaking with McNabola and disclosing the contents of the jury question to him.

132.    Agee called McNabola at 3:52 p.m. on June 9, 2015 and told him the substance of the jury question. Agee did not attempt to even contact representatives for Brunswick until 4:19 p.m. on June 9, 2015, after having been advised of the settlement by McNabola, and only then told representatives from Brunswick that a jury question was pending. By that time, McNabola had settled the case for $25 million after concealing the existence of the jury question from Brunswick.

133.    Additionally, both Agee and McNabola lied to Judge Budzinski about what occurred during their phone conversation. Agee told Judge Budzinski that she called both McNabola and Brunswick contemporaneously, which was untrue. Agee also told Judge Budzinski that she had not divulged the substance of the jury question to McNabola, which was also untrue. McNabola spoke to Judge Budzinski after the settlement had been effectuated and told her that Brunswick was not interested in the trial or the jury question, which was untrue because this conversation occurred before Brunswick was even notified about the existence of the jury question from Agee.

134. If Agee had disclosed the existence of the jury question to representatives of both the Vandenbergs and Brunswick as she was required to do, both sides would have learned of the jury question simultaneously. If Agee had followed proper protocol, McNabola would not have gained an unfair advantage on June 9, 2015.

135. As demonstrated by the jury's execution of Verdict Form B on June 9, 2015 and during the jury recall hearing on February 22, 2016, the jury was ready to find for Brunswick on June 9, 2015 and that was what would have occurred absent Agee's improper actions.

136. The misconduct in this Count violated Brunswick's constitutional right to a fair jury trial in an impartial tribunal guaranteed to all litigants by the Fourteenth Amendment.

137. The misconduct in this Count violated Brunswick's constitutional right to due process of law because it was deprived of having judgment entered on the jury verdict on June 9, 2015 after the jury returned a defense verdict.

138. The misconduct described in this Count was undertaken intentionally, with malice and indifference to Brunswick's clearly established constitutional rights.

139. As a result of Agee's and McNabola's improper actions, Brunswick has suffered and continues to suffer harm in that it has had to pursue a post-trial remedy in the Circuit Court of Cook County for over 18 months. Absent the due process violation, this case would have concluded with a jury verdict in favor of Brunswick.

## Count III

### (Negligence – McNabola)

140. Each paragraph of this Complaint is incorporated herein.

141. McNabola owed a duty to Brunswick under the common law, the Illinois Supreme Court Rules, the Illinois Rules of Professional Conduct, and the Circuit Court of Cook County

Rules to disclose *ex parte* communications and to disclose material information about the jury question that he learned from Agee on June 9, 2015.

142.    Specifically, Circuit Court of Cook County Rule 17.1 states that "[n]o judge shall permit and no lawyer shall engage in ex parte communications, unless allowed by law, in connection with any matter pending before said judge."

143.    Circuit Court of Cook County Rule 17.2 states that "[i]f an *ex parte* communication in connection with any matter pending before the judge occurs, the judge shall disclose the circumstances and substance of said communication to all parties of record at the next hearing in open court and, if a court reporter is available, on the record."  The rule further provides that "[i]f a hearing is not scheduled within two full court days of said communication, the lawyer who has initiated said communication shall promptly serve a written summary of the contents of said communication on all parties of record and the judge."

144.    Illinois Rule of Professional Conduct 3.4(a) provides that a "lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.  A lawyer shall not counsel or assist another person to do any such act."  Illinois Rule of Professional Conduct 3.4(b) provides that a "lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."

145.    Illinois Supreme Court Rule 63(A)(5) provides that "[a] judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that: (a) [w]here circumstances require, *ex parte* communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized;

31

provided, (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication, and (ii) the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication and allows an opportunity to respond."

146.    McNabola breached the duty owed to Brunswick to disclose his improper conversations with Agee on June 9, 2015 wherein he learned the contents of the jury question. McNabola further breached that duty when he failed to disclose his improper conversation with Agee to Judge Budzinski and falsely told her that Brunswick was not interested in the jury question before Agee had even called representatives from Brunswick informing them that there was a jury question even pending.

147.    McNabola's breach caused Brunswick harm in that it entered into the settlement agreement without knowledge of the material jury question to which it was entitled, and would have found out about absent McNabola's failure to disclose his improper *ex parte* conversation with Agee.

148.    McNabola's breach resulted in damages to Brunswick in that it has spent the past 18 months engaged in post-trial proceedings.  Absent McNabola's misconduct on June 9, 2015, the jury would have returned a verdict for Brunswick and all the post-trial proceedings would have been unnecessary.

149.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

150.    As a result of this misconduct, Brunswick has suffered and continues to suffer harm.

## Count IV

### (Civil Fraud – McNabola)

151.    Each paragraph of this Complaint is incorporated herein.

152.    McNabola concealed the jury question from Brunswick so that he could settle the case for $25 million.  McNabola concealed the jury question from Brunswick by inducing Agee to "hold off" contacting them about the jury question.  McNabola also failed to inform Patton and Patitucci that he spoke with Agee and learned the contents of the jury question from Agee.

153.    The jury question, its contents, and McNabola's knowledge of both were material facts because representatives of Brunswick would have revoked the $25 million settlement offer if they had knowledge of these facts.

154.    McNabola failed to advise representatives of Brunswick of these facts so that he could settle the case before they learned about the jury question.

155.    Brunswick settled the case without knowing any of these material facts.  If representatives of Brunswick knew any of these material facts, there would not have been any settlement.

156.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

157.    As a result of this misconduct, Brunswick has suffered and continues to suffer harm.

## Count V

### (Civil Conspiracy – McNabola)

158.    Each paragraph of this Complaint is incorporated herein.

159.    On and after June 9, 2015, McNabola, Agee, and the co-conspirators named herein devised a scheme to preclude Brunswick from discovering the truth of what occurred on the

33

afternoon of June 9, 2015, which further prevented Brunswick from obtaining the relief that the jury was going to render in its favor on the afternoon of June 9, 2015.  The objective of the scheme was to defraud Brunswick by entering into a settlement and then attempting to enforce the settlement that had been procured through fraud.

160.    On June 9, 2015, after Agee divulged the substance of the jury question to McNabola, Agee followed McNabola's directive and held off on contacting representatives of Brunswick to inform them that a jury question was pending.

161.    Agee did not attempt to call representatives of Brunswick about the existence of the jury question until McNabola called her advising that the case had settled.

162.    Additionally, both McNabola and Agee were not forthcoming to Judge Budzinski or representatives of Brunswick about their conversation in which Agee divulged the substance of the jury question to McNabola.

163.    The afternoon of June 9, 2015, McNabola, Agee, Degnan, and Nofsinger did not advise Judge Budzinski or any representatives from Brunswick that Agee had divulged the substance of the jury question to McNabola and that Agee did not call representatives from Brunswick at the same time that she called McNabola.

164.    After June 9, 2015, McNabola and Agee both continued to hide the fact that they had conversations on June 9, 2015 where Agee divulged the substance of the jury question to McNabola and McNabola induced Agee to "hold off" contacting the defense about the jury question.

165.    Thereafter, McNabola, Agee, and their co-conspirators prolonged the litigation in the Circuit Court of Cook County by attempting to enforce the fraudulently procured settlement agreement.

166.    McNabola, Agee, and their co-conspirators' actions in furtherance of this conspiracy were taken intentionally and purposefully to injure Brunswick.

167.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

168.    Brunswick has suffered damages as a direct and proximate result of Defendants' conspiracy, as described herein, and is entitled to recover such damages against McNabola.

## Count VI

### (Negligence – Agee)

169.    Each paragraph of this Complaint is incorporated herein.

170.    Agee, as a member of the Court's staff, had a duty to not interfere with the Court's administration of justice and a duty to call both sides contemporaneously with instructions to come to Court to hear the contents of the jury note.

171.    Agee breached the duty owed to Brunswick to not interfere with the Court's administration of justice and the duty to call both sides contemporaneously with instructions to come to Court to hear the contents of the jury note.  Agee further breached those duties when she failed to disclose her improper conversation with McNabola to Judge Budzinski and falsely told her that she called both parties contemporaneously.

172.    Agee's breach caused Brunswick's harm in that it entered into the settlement agreement without knowledge of the material jury question to which it was entitled, and would have found out about absent Agee's failure to disclose the existence of the jury note contemporaneously with both parties.

173.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

174.     Agee's breach resulted in damages to Brunswick in that it has spent the past 18 months engaged in post-trial proceedings.  Absent Agee's misconduct on June 9, 2015, the jury would have returned a verdict for Brunswick and all the post-trial proceedings would have been unnecessary.

## Count VII

### (Civil Fraud – Agee)

175.     Each paragraph of this Complaint is incorporated herein.

176.     Agee concealed the jury question from Brunswick so that McNabola could settle the case for $25 million.  Agee concealed the jury question from Brunswick by calling Patton and informing him that a jury question was pending 27 minutes after calling McNabola and telling him the contents and existence of the jury question.  Agee also failed to inform Patton that when she spoke with McNabola, she divulged the contents of the jury question to McNabola, and he asked her to "hold off" on contacting the defense.

177.     The jury question, its contents, and McNabola's knowledge of both were material facts because representatives of Brunswick would have revoked the $25 million settlement offer if they had knowledge of these facts.

178.     Agee failed to advise representatives of Brunswick of these facts so that McNabola could settle the case before they learned about the jury question.

179.     Brunswick settled the case without knowing any of these material facts.  If representatives of Brunswick had known any of these material facts, there would not have been any settlement.

180.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

181.    Brunswick suffered damages as a result of this misconduct.

## Count VIII

### (Civil Conspiracy – Agee)

182.    Each paragraph of this Complaint is incorporated herein.

183.    On and after June 9, 2015, McNabola, Agee, and the co-conspirators named herein devised a scheme to preclude Brunswick from discovering the truth of what occurred on the afternoon of June 9, 2015, which further prevented Brunswick from obtaining the relief that the jury was going to render in its favor on the afternoon of June 9, 2015.  The objective of the scheme was to defraud Brunswick by entering into a settlement and then attempting to enforce the settlement that had been procured through fraud.

184.    On June 9, 2015, after Agee divulged the substance of the jury question to McNabola, Agee followed McNabola's directive and held off on contacting representatives of Brunswick to inform them that a jury question was pending.

185.    Agee did not attempt to call representatives of Brunswick about the existence of the jury question until McNabola called her advising that the case had settled.

186.    Additionally, both McNabola and Agee were not forthcoming to Judge Budzinski or representatives of Brunswick about their conversation in which Agee divulged the substance of the jury question to McNabola.

187.    The afternoon of June 9, 2015, McNabola, Agee, Degnan, and Nofsinger did not advise Judge Budzinski or any representatives from Brunswick that Agee had divulged the substance of the jury question to McNabola and that Agee did not call representatives from Brunswick at the same time that she called McNabola.

188.     After June 9, 2015, McNabola and Agee both continued to hide the fact that they had conversations on June 9, 2015 where Agee divulged the substance of the jury question to McNabola and McNabola induced Agee to "hold off" contacting the defense about the jury question.

189.     McNabola, Agee, and their co-conspirators' actions in furtherance of this conspiracy were taken intentionally, purposefully, without lawful justification, and maliciously to injure Brunswick.

190.     Thereafter, McNabola, Agee, and their co-conspirators prolonged the litigation in the Circuit Court of Cook County by attempting to enforce the fraudulently procured settlement agreement.

191.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

192.     Brunswick has suffered damages as a direct and proximate result of Defendants' conspiracy, as described herein, and is entitled to recover such damages against Agee.

## Count IX

### (Negligence – The McNabola Law Group, P.C.)

193.     Each paragraph of this Complaint is incorporated herein.

194.     On and after June 9, 2015, McNabola was a partner and representative of The McNabola Law Group.

195.     McNabola owed a duty to Brunswick under the common law, the Illinois Supreme Court Rules, the Illinois Rules of Professional Conduct, and the Circuit Court of Cook County Rules to disclose *ex parte* communications and to disclose material information about the jury question that he learned from Agee on June 9, 2015.

196. Specifically, Circuit Court of Cook County Rule 17.1 states that "[n]o judge shall permit and no lawyer shall engage in ex parte communications, unless allowed by law, in connection with any matter pending before said judge."

197. Circuit Court of Cook County Rule 17.2 states that "[i]f an *ex parte* communication in connection with any matter pending before the judge occurs, the judge shall disclose the circumstances and substance of said communication to all parties of record at the next hearing in open court and, if a court reporter is available, on the record." The rule further provides that "[i]f a hearing is not scheduled within two full court days of said communication, the lawyer who has initiated said communication shall promptly serve a written summary of the contents of said communication on all parties of record and the judge."

198. Illinois Rule of Professional Conduct 3.4(a) provides that a "lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act." Illinois Rule of Professional Conduct 3.4(b) provides that a "lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."

199. Illinois Supreme Court Rule 63(A)(5) provides that "[a] judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that: (a) [w]here circumstances require, *ex parte* communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided, (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication, and (ii) the judge makes provision promptly to notify

all other parties of the substance of the *ex parte* communication and allows an opportunity to respond."

200.    McNabola breached the duty owed to Brunswick to disclose his improper conversations with Agee on June 9, 2015.  McNabola further breached that duty when he failed to disclose his improper conversation with Agee to Judge Budzinski and falsely told her that Brunswick was not interested in the jury question before Agee had even called representatives from Brunswick informing them that there was a jury question pending.

201.    McNabola's breach caused Brunswick's harm in that it entered into the settlement agreement without knowledge of the material jury question to which it was entitled, and would have found out about absent McNabola's failure to disclose his improper *ex parte* conversation with Agee.

202.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

203.    McNabola's breach resulted in damages to Brunswick in that it has spent the past 18 months engaged in post-trial proceedings.  Absent McNabola's misconduct on June 9, 2015, the jury would have returned a verdict for Brunswick and all the post-trial proceedings would have been unnecessary.

## Count X

### (Civil Fraud – The McNabola Law Group, P.C.)

204.    Each paragraph of this Complaint is incorporated herein.

205.    On and after June 9, 2015, McNabola was a partner and representative of The McNabola Law Group.

206.     McNabola concealed the jury question from Brunswick so that he could settle the case for $25 million.  McNabola concealed the jury question from Brunswick by inducing Agee to "hold off" contacting them about the jury question.  McNabola also failed to inform Patton and Patitucci that he spoke with Agee and learned the contents of the jury question from Agee.

207.     The jury question, its contents, and McNabola's knowledge of both were material facts because representatives of Brunswick would have revoked the $25 million settlement offer if they had knowledge of these facts.

208.     McNabola failed to advise representatives of Brunswick of these facts so that he could settle the case before they learned about the jury question.

209.     Brunswick settled the case without knowing any of these material facts.   If representatives of Brunswick had known any of these material facts, there would not have been any settlement.

210.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

211.     Brunswick suffered damages as a result of McNabola's concealment of material facts and, as a result, is entitled to recover such damages against McNabola Law Group.

## Count XI

### (Civil Conspiracy – The McNabola Law Group, P.C.)

212.     Each paragraph of this Complaint is incorporated herein.

213.     On and after June 9, 2015, McNabola was a partner and representative of The McNabola Law Group.

214.     On and after June 9, 2015, McNabola, Agee, and the co-conspirators named herein devised a scheme to preclude Brunswick from discovering the truth of what occurred on the

afternoon of June 9, 2015, which further prevented Brunswick from obtaining the relief that the jury was going to render in its favor on the afternoon of June 9, 2015. The objective of the scheme was to defraud Brunswick into entering into and enforcing a settlement that had been procured through fraudulent means.

215.    On June 9, 2015, after Agee divulged the substance of the jury question to McNabola, Agee followed McNabola's directive and held off on contacting representatives of Brunswick to inform them that a jury question was pending.

216.    Agee did not attempt to call representatives of Brunswick about the existence of the jury question until McNabola called her advising that the case had settled.

217.    Additionally, both McNabola and Agee were not forthcoming to Judge Budzinski or representatives of Brunswick about their conversation in which Agee divulged the substance of the jury question to McNabola.

218.    The afternoon of June 9, 2015, McNabola, Agee, Degnan, and Nofsinger did not advise Judge Budzinski or any representatives from Brunswick that Agee had divulged the substance of the jury question to McNabola and that Agee did not call representatives from Brunswick at the same time that she called McNabola.

219.    After June 9, 2015, McNabola and Agee both continued to hide the fact that they had conversations on June 9, 2015 where Agee divulged the substance of the jury question to McNabola and McNabola induced Agee to "hold off" contacting the defense about the jury question.

220.    McNabola, Agee, and their co-conspirators' actions in furtherance of this conspiracy were taken intentionally, purposefully, without lawful justification, and maliciously to injure Brunswick.

42

221. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference.

222. Brunswick has suffered damages as a direct and proximate result of Defendants' conspiracy, as described herein, and is entitled to recover such damages against McNabola Law Group.

## Count XII

### (Respondeat Superior Liability – Cook County)

223. Each paragraph of this Complaint is incorporated herein.

224. At all times material to this Complaint, Agee was an employee of Defendant Cook County, was acting in the scope of her employment, and her acts which violated state law are directly chargeable to Cook County under state law pursuant to *respondeat superior*.

## Count XIII

### (745 ILCS § 10/9-102 – Cook County)

225. Each paragraph of this Complaint is incorporated herein.

226. Defendant Cook County was the employer of Agee at all times relevant and material to this Complaint.

227. Agee committed the acts alleged herein under color of law and in the scope of her employment as an employee of Cook County in committing the misconduct described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Brunswick Corporation respectfully requests that the Court find in their favor and against all Defendants and award the following relief:

a)      Compensatory damages for the Defendants' wrongful actions;

b)      An award of punitive damages against each of the Defendants;

43

c)       Attorney's fees and costs; and

d)       Any other relief that this Court may deem just and proper.

## JURY DEMAND

Brunswick requests a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all

issues so triable.


Dated: December 16, 2016                              Respectfully submitted,

                                                     **BRUNSWICK CORPORATION**

                                        By:      /s/ Dan K. Webb

                                                 Dan K. Webb
                                                 dwebb@winston.com
                                                 Jared L. Hasten
                                                 jhasten@winston.com
                                                 Alexandra J. Schaller
                                                 aschaller@winston.com
                                                 Winston & Strawn LLP
                                                 35 West Wacker Drive
                                                 Chicago, Illinois 60601

                                                 *Counsel for Plaintiff*