UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRUNSWICK CORPORATION,

      Plaintiff,

    v.

MARK MCNABOLA, THE MCNABOLA
LAW GROUP, P.C., TATIANA AGEE, and
COOK COUNTY,

      Defendants.

No. 16 CV 11414

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

During the jury deliberation phase of a multi-million dollar personal injury lawsuit, a lawyer and a Circuit Court of Cook County clerk allegedly induced Brunswick Corporation to settle the case before Brunswick learned of a jury question suggesting a favorable verdict for the company. Complications and recriminations ensued, and Brunswick brings federal civil rights and state-law tort claims against the lawyer (and his firm) and the clerk (and her employer, Cook County). Defendants move to dismiss all claims against them. For the following reasons, the motions to dismiss are granted.

I.    **Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's

favor, but the court need not accept legal conclusions or conclusory allegations. *Id.*
at 678–79.

## II.   Background

The complaint alleges that in 2009, Scot Vandenberg became a quadriplegic
after falling from a yacht manufactured by Brunswick Corporation and owned by
RQM LLC, who had modified the yacht since its manufacture. Vandenberg and his
wife retained Mark McNabola, of The McNabola Law Group, P.C., to sue Brunswick
and RQM. In May 2015, the case proceeded to a jury trial in the Law Division of the
Circuit Court of Cook County, Illinois, before Judge Budzinski. By the time of trial,
RQM had settled with the Vandenbergs, and Brunswick was the remaining
defendant. Part of Brunswick's defense was attributing fault to RQM under
admiralty law.

The jury began deliberating around 2:30 p.m. on June 9, 2015. Shortly
thereafter, Brunswick's insurer's claims adjuster made a $25 million settlement
offer to McNabola, who did not accept it at that time. At 3:50 p.m., the jury sent a
question to the judge asking whether it could "find fault with RQM without finding
fault with Brunswick?" Judge Budzinski instructed her court clerk, Tatiana Agee, to
call both sides, inform them there was a jury question, and ask them to come to
court to address it.

At 3:52 p.m., Agee called McNabola and told him the contents of the jury
question. McNabola told her the answer was "no" and told her to "hold off" on doing
anything because he was going to settle the case. McNabola then called Brunswick's
counsel at 3:55 p.m. and left a message stating that the jury was still out. McNabola

did not mention the jury question. McNabola called Agee again at 4:01 p.m. At 4:02 p.m., McNabola spoke with Brunswick's counsel, who inquired about McNabola's message and asked if McNabola knew whether it was still his understanding that the jury was deliberating. McNabola confirmed that the jury was deliberating and did not mention the jury question or its contents, or that he had told Agee to "hold off." McNabola asked to speak to the claims adjuster, and they spoke around 4:03 p.m. McNabola made settlement demands for $30 million and $27.5 million, which the adjuster rejected. McNabola then offered to settle for $25 million, and the adjuster accepted. McNabola did not tell him about the pending jury question either. Around 4:15 p.m., McNabola called Judge Budzinski to advise her that the parties had settled, stating that neither he nor Brunswick's counsel were interested in the jury question or anything more to do with the trial, and that he was sending his associate to the courthouse to put the settlement on the record. McNabola then spoke with Brunswick's counsel around 4:18 p.m., but did not say anything about a pending jury question or that he knew the contents of the jury's note. The court clerk, Agee, called Brunswick's counsel a minute later to inform him that there was a pending jury question, but she did not tell him what the question was.

At 4:40 p.m., McNabola's associate and a different lawyer for Brunswick met in Judge Budzinski's chambers. The judge asked why it took everyone so long to return after the jury presented its question. Brunswick's lawyer said that his team returned as soon as it learned about the jury question, but McNabola's associate— who knew that McNabola had learned the contents of the jury note an hour

3

earlier—did not say anything. Judge Budzinski then revealed the jury question to everyone and put the settlement on the record. At that time, the judge and Brunswick did not know that McNabola had learned the contents of the jury note from Agee and had told her to "hold off." After putting the settlement on the record, Judge Budzinski answered the jury's question by referring them to the jury instructions and she allowed the jury to continue deliberating. Within ten minutes, the jury reached a defense verdict in favor of Brunswick. The jury was not aware of the settlement before it reached the verdict.

Brunswick's counsel returned to the courthouse around this time and learned that the jury had reached a verdict for Brunswick and that the jury question had been presented a half hour before Agee called him. He informed Judge Budzinksi that the settlement had occurred without him knowing there was a pending jury question, and he showed the judge his cell phone, which indicated that he received his first call from her chambers at 4:19 p.m. McNabola's associate, who was still present, did not advise anyone that McNabola had received Agee's call before initiating settlement and had told her to "hold off." Around 5:15 p.m., Brunswick's counsel learned from Judge Budzinksi that McNabola spoke with Agee about the jury question before the case had been settled. Judge Budzinski refused to enter an order to reflect that the jury returned a verdict for the defense.

The next day, Brunswick's counsel emailed Judge Budzinski. He told her that McNabola had tried to negotiate a settlement at 3:55 p.m. and that Brunswick had not been notified of the jury question until 4:19 p.m., after the settlement had been

4

reached. Brunswick also filed a motion for an evidentiary hearing to obtain Agee's and McNabola's testimony about the previous day. A few days later, Brunswick also filed a motion to vacate the settlement agreement and to enter judgment on the jury verdict. Shortly thereafter, Judge Budzinski entered a Memorandum of the Court disclosing: that McNabola had told her that since the case had settled, neither counsel were interested in the jury note or anything to do with trial; that Agee told the judge that she had not shared the contents of the jury note with McNabola but that he had asked her to "hold off;" that Agee said she called McNabola and Brunswick's counsel at the same time; and that the judge's extern overheard Agee reveal the jury note to McNabola, who suggested to Agee that the answer to the question was "no." Judge Budzinksi entered a protective order precluding any of the parties from speaking with court staff, including Agee, the extern, or the sheriff's deputy assigned to the judge's courtroom. McNabola's firm opposed the motion to vacate and motion for evidentiary hearing, acknowledging that Agee called McNabola around 3:50 p.m. but not that Agee disclosed the note's contents or that McNabola had told her to "hold off."

Judge Budzinksi recused herself from the case, which was transferred to Judge Lynch. Judge Lynch granted Brunswick's motion for an evidentiary hearing and to subpoena certain phone records. Judge Lynch denied Brunswick's motion to lift the protective order, and it could not interview court employees before the hearing. New counsel appeared on behalf of the Vandenbergs to serve as co-counsel with McNabola.

Judge Lynch conducted a four-day evidentiary hearing. McNabola admitted that Agee told him the substance of the jury question and that he told Agee to delay a conference on the question. McNabola also testified that he did not tell Brunswick's counsel or its claims adjuster that he spoke with Agee, and that neither indicated they knew about the jury question. Agee denied that she told McNabola the contents of the jury question and said that she delayed calling Brunswick's counsel because she assisted a docket clerk with a filing. That docket clerk testified that the filing with Agee took five to ten minutes and that he had returned to his office (from the courthouse—a ten minute walk) by 4:07 p.m. McNabola and Agee both testified that in the weeks after the incident, McNabola called Agee and they spoke about what had occurred. Brunswick's claims adjuster and its counsel testified that the company would not have agreed to the settlement if it had known of the jury question, its contents, McNabola's knowledge of the jury question or its contents, or McNabola's request that Agee "hold off."

In January 2016, Judge Lynch granted Brunswick's request to vacate the settlement agreement, on the basis of fraud in the inducement and unilateral mistake. Judge Lynch found that Agee and McNabola had engaged in improper *ex parte* communications and that Brunswick was unaware of the note's existence or contents (on a material question) when it settled the case. The judge also ruled that McNabola should have disclosed his knowledge of the jury question and its contents, finding that McNabola and Agee engaged in parallel conduct but did not have an agreement. At that time, Judge Lynch did not rule on Brunswick's request

for entry of judgment on the verdict. In chambers after the ruling, the judge apprised counsel for Brunswick and for the Vandenbergs that he was obligated to refer the matter to law enforcement. At Judge Lynch's request, Brunswick's counsel agreed to refer relevant information to the Cook County State's Attorney's Office.

In February 2016, Judge Lynch ruled that he would reconstitute the jury to make a complete record of the events of June 9, 2015, and to address the Vandenbergs' concerns that they had lost the opportunity to have the verdict announced in open court and have the jury polled. Judge Lynch reassembled the jury and placed the jurors under oath. The jurors confirmed that the verdict for Brunswick was unanimous and reached prior to learning of the parties' settlement. Judge Lynch announced in open court the jury's unanimous finding and polled the jury. The jury also confirmed that since reaching the verdict in June 2015, nothing had affected or influenced their ability to answer the court's questions about their verdict. After that hearing, Judge Lynch asked the parties to file supplement briefs on Brunswick's request to enter judgment on the jury verdict.

The day before the supplemental briefs were due, the Vandenbergs hired new counsel. Over Brunswick's objection, Judge Lynch vacated the due date for the briefs and set a status hearing a few weeks out. In the meantime, the Vandenbergs' new counsel contacted Brunswick's insurer—attempting to accept the $25 million settlement offer—and sought to reopen discovery to depose Judge Budzinski and other individuals who testified at the evidentiary hearing. The Vandenbergs argued that they were unrepresented at the evidentiary hearing because the co-counsel

7

who appeared at the hearing was McNabola's personal attorney. Brunswick opposed and Judge Lynch denied these requests. Brunswick and the Vandenbergs filed supplemental briefs on Brunswick's request to enter judgment on the jury verdict. The Vandenbergs also moved to enforce the settlement agreement previously vacated by Judge Lynch, arguing that they wanted to accept it and that McNabola's misconduct could not be attributable to them to prevent its enforcement. Judge Lynch heard oral argument, again raising the issue of referral to law enforcement.

In May 2016, Brunswick's counsel sent a letter to the Cook County State's Attorney's Office, and later provided copies to counsel for the Vandenbergs and McNabola. McNabola also filed a petition to intervene in the case, arguing that no one was representing his interests. The Vandenbergs took no position on McNabola's request to intervene, but Brunswick opposed it. Judge Lynch denied McNabola's petition to intervene as untimely and denied the Vandenbergs' motion to enforce the settlement. He entered judgment on the June 9, 2015 jury verdict.

A month later, in June 2016, the Vandenbergs filed a post-trial motion for disqualification, arguing that Judge Lynch was biased against McNabola, which tainted his rulings. In September 2016, Judge Lynch denied the Vandenbergs' motion for disqualification but recused himself. After the case was reassigned, the Vandenbergs raised again all the arguments that Judge Lynch had rejected and McNabola filed another petition to intervene. This time, McNabola included an affidavit from his co-counsel stating that co-counsel had represented the Vandenbergs during the evidentiary hearing. This time, the Vandenbergs opposed

McNabola's request to intervene, arguing that co-counsel was not acting as their attorney at the evidentiary hearing. Judge Lynch denied McNabola's request to intervene in December 2016.

On December 16, 2016, Brunswick filed this suit against McNabola, his law firm, Agee, and Cook County. [1].[1] At that time, the Vandenbergs' post-trial motions remained pending. A few days later, the new judge assigned to the Vandenberg matter, Judge O'Hara, ruled on the Vandenbergs' post-trial motions, reinstated the $25 million settlement, vacated the jury verdict, and found that Brunswick had "freely settled this case *after* full disclosure of all material information concerning the content and the time of publishing the jury note." [34-1] at 4, ¶ 6. Judge O'Hara entered judgment and denied Brunswick's motion to reconsider, [34-1] at 6–7, and Brunswick has since appealed. *See* [49] at 13, 22.

Brunswick brings a claim against Agee for denial of due process of law under 42 U.S.C. § 1983 (Count I), a § 1983 conspiracy claim against Agee and McNabola (Count II), state-law negligence, fraud, and conspiracy claims against Agee, McNabola, and McNabola's law firm (Counts III–XI), and claims against Cook County for respondeat superior liability and indemnification (Counts XII and XIII). The defendants move to dismiss all claims against them. [19]; [30]; [38].

---

[1] Bracketed numbers refer to entries on the district court docket.

### III.   Analysis

### A.      Due Process Claims

Brunswick's two federal claims (Counts I and II) are premised on denial of due process in the Vandenberg matter. To state a procedural due process claim, Brunswick must allege that a state actor deprived it of a constitutionally protected interest without due process of law. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Defendants argue that Brunswick has failed to allege a protected interest and that Brunswick has failed to allege that state-law remedies are inadequate. Brunswick responds that it sufficiently pled that Agee deprived the company of its protected interest in a fair trial and its property interest in the $25 million settlement. Brunswick also contends that state-law remedies are inadequate because its post-trial discovery was limited and it only seeks equitable relief in state court but money damages through these federal claims.

The Due Process Clause of the Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Therefore, "[a]n essential component of a procedural due process claim is a protected property or liberty interest." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007)). "Although the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that

10

support claims of entitlement to those benefits.'" *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509–10 (7th Cir. 2013) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). To state a claim, Brunswick must allege that it has "a legitimate claim of entitlement" to the protected interest, not just a unilateral expectation of it. *Khan*, 630 F.3d at 527 (quoting *Roth*, 408 U.S. at 577).

While Brunswick argues that its protected interests are both its right to a fair trial and its property interest in the $25 million pledged in settlement, its complaint pleads otherwise. The complaint alleges only that Brunswick had a due process right under the Fourteenth Amendment to a fair jury trial. [1] ¶ 116. Brunswick alleges that Agee's misconduct violated that right by depriving Brunswick of having judgment entered on the jury verdict in its favor, and that Brunswick has suffered harm by having to pursue a post-trial remedy in the Circuit Court of Cook County for over eighteen months. [1] ¶¶ 115–26. Therefore, the deprivation alleged in the complaint is Brunswick's interest in having the jury verdict entered—there is no mention of the $25 million settlement as a protected property interest. That argument was developed solely in response to the defendants' motions to dismiss, but a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).[2]

---

[2] At the time Brunswick filed its complaint, Judge O'Hara had not yet reinstated the $25 million settlement. *See* [34-1] at 1–7.

The right to a fair trial, invoked by Brunswick's complaint, protects a plaintiff from being deprived of property or liberty without due process, but it is not a protected property or liberty interest in and of itself. Similarly, the right to an impartial tribunal is not a property or liberty interest, but a mechanism to protect property or liberty. *See, e.g., Weiss v. United States*, 510 U.S. 163, 178 (1994) ("It is elementary that 'a fair trial in a fair tribunal is a basic requirement of due process.' A necessary component of a fair trial is an impartial judge.") (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)); *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). The complaint provides detailed allegations about how Agee and McNabola intentionally interfered with the integrity of the return of the jury's verdict, but it is missing an allegation of interference with a protected property right.

But even if Brunswick had a protected interest in the verdict, its due process claims fail because Brunswick does not allege that state-law remedies are inadequate. Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996) (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1981)). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). When a plaintiff brings a procedural due process claim based on the

"random and unauthorized" conduct of a state actor and state-law remedies exist, the plaintiff must either avail itself of state-law remedies or demonstrate that they are inadequate. *Doherty*, 75 F.3d at 323 (citing *Daniels v. Williams*, 474 U.S. 327, 339–40 (1986) (Stevens, J., concurring)), *Hudson*, 468 U.S. at 539 (O'Connor, J., concurring), and *Parratt*, 451 U.S. at 537–44). Brunswick alleges that Agee's actions were unauthorized by Judge Budzinski and in violation of established trial procedures. Because Agee's alleged actions were random and unauthorized, Brunswick can only state a due process claim if post-deprivation state-law remedies are inadequate.

A state-law remedy should not be rejected as inadequate unless the remedy "can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990). And state-law relief is not deemed inadequate because it "is far from certain and complete." *Id*. (quoting *Hudson*, 468 U.S. at 535). Indeed, "almost all litigation, whether conducted in a state or federal forum, may be characterized as a lengthy and speculative process," and litigants "may lament that a particular forum may yield a more favorable result depending upon the nature of the claim and the particular position they support." *Id*.

Brunswick pleads that it pursued post-trial remedies in the Circuit Court of Cook County for eighteen months after trial to overturn the settlement and to have judgment entered on the jury verdict in its favor. [1] ¶¶ 54–112, 126. Brunswick

13

was allowed to subpoena phone records, and its motion for an evidentiary hearing was granted, culminating in a four-day evidentiary hearing where all of the key players testified. [1] ¶¶ 62–84. Judge Lynch also reconstituted the jury (who confirmed the defense verdict) and allowed the parties to brief Brunswick's request to enter judgment on the jury verdict. [1] ¶¶ 91–97. Brunswick argues that the evidentiary hearing was insufficient because it was limited to contractual issues surrounding the validity of the settlement and the procedural issue concerning the propriety of entering judgment on the jury verdict. But the propriety of entering judgment on the jury verdict is the very interest Brunswick alleged to be constitutionally protected in this complaint, and it received process: after the incident, Brunswick had the opportunity to subpoena phone records, to examine witnesses at an evidentiary hearing, and to raise and brief the relevant legal issues. And that process, at least for a time, allowed Brunswick to have the favorable judgment entered. The complaint does not allege a failure of state-court process.

Brunswick also contends that post-trial discovery was limited and that it did not receive a full hearing because its requests for depositions, interviews, and other third-party subpoenas were denied. But Brunswick's dissatisfaction with the process does not mean that the proceedings were not meaningful or did not give Brunswick an opportunity to be heard. A plaintiff cannot seek to undo an adequate process merely "because it did not produce the anticipated result," and "[t]he due process clause requires that a claimant receive adequate process, not the most advantageous process available to him." *Bettendorf v. St. Croix Cty.*, 631 F.3d 421,

14

427, 428 (7th Cir. 2011); *see Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013) ("The due process clause does not permit a litigant to disdain his opportunities under state law and then demand that the federal judiciary supply a remedy.") (affirming dismissal of due process claim).

Besides post-trial proceedings, Brunswick has other state-law remedies. Any of these alleged errors could be remedied through a state-court review of Brunswick's challenges to post-trial proceedings in the Vandenberg matter. *See, e.g., Simmons*, 712 F.3d at 1044 (dismissing procedural due process claim where the state had offered the plaintiff "ample process" because he had a full hearing and judicial review); *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 535–36 (7th Cir. 2008) (plaintiff failed to state a claim where alleged errors in village board's post-termination hearing could be remedied by state-court review of the plaintiff's legal and factual challenges to the board's action against him). Brunswick could also bring its state-law claims (Counts III–XIII) in state court to redress the defendants' alleged conduct. *See, e.g., Easter House*, 910 F.2d at 1405 & n.14 (potential state-law causes of action were "meaningful post-deprivation remedies" sufficient to provide the requisite due process protection, even if the plaintiff was not necessarily entitled to recovery under those state-law theories).

Brunswick's request for money damages in this case does not make the state-law equitable remedy inadequate. A state-law remedy may be adequate even if it does not provide the same relief available under § 1983. *See Parratt*, 451 U.S. at 544 ("Although the state remedies may not provide the respondent with all the relief

15

which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."). A plaintiff in procedural due process cases may seek compensatory damages in certain circumstances, but process-based remedies are the focus of procedural due process rights. *See Simmons*, 712 F.3d at 1044 (citing *Parratt*, 451 U.S. at 538–41, for the proposition that "the opportunity to litigate in state court is all the process due for a state actor's unauthorized departure from requirements of state law"); *Evers v. Astrue*, 536 F.3d 651, 660 (7th Cir. 2008) ("notice and hearing" are "the remedies available for a procedural due-process violation"); *Dargis v. Sheahan*, 526 F.3d 981, 989–90 (7th Cir. 2008) (the appropriate remedy for denial of plaintiff's procedural due process rights was ordering his public employer to hold the employment hearing required by state law, not proceeding to trial on the plaintiff's damages because the hearing was all the due process to which the plaintiff was entitled); *Cunningham v. Washington*, 16 Fed. App'x 502, 506 (7th Cir. 2001) (where state law provides an adequate post-deprivation remedy, the plaintiff was "not entitled to damages under § 1983") (citing *Hudson*, 468 U.S. 517). Brunswick's arguments indicate that it "does not want a hearing. [It] wants money. That's what the due process clause does *not* guarantee; the federal entitlement is to process, not to a favorable outcome." *Simmons*, 712 F.3d at 1044.

Brunswick has not alleged that available state-law remedies are inadequate, and because Illinois post-deprivation remedies provide Brunswick with a meaningful opportunity to be heard—through post-trial evidentiary proceedings, its

16

subsequent appeal, or the assertion of state-law claims—Brunswick's procedural due process claim fails. *See, e.g., Tenny v. Blagojevich*, 659 F.3d 578, 583 (7th Cir. 2011); *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 (7th Cir. 2010).

Brunswick has failed to state a claim for denial of due process. Because Brunswick has not alleged an underlying civil rights violation to support its dependent § 1983 conspiracy claim, its conspiracy claim also fails. *See, e.g., Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions.").[3] Brunswick's federal claims (Counts I and II) are dismissed for failure to state a claim.

### B.    State-Law Claims

There is no diversity jurisdiction (Brunswick is headquartered in Illinois), and I decline to exercise supplemental jurisdiction over Brunswick's remaining state-law claims (Counts III–XIII). *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*,

---

[3] McNabola asked Agee to hold off, and she had a preference (undisclosed to McNabola) for plaintiffs and their attempts to settle before defendants knew about a jury issue. Put that together with the allegations of false statements by McNabola and Agee after their shenanigans were uncovered, and McNabola and Agee certainly look bad. But these allegations do not support an inference that the two reached the necessary conspiratorial agreement. The jury's question did not indicate that a verdict was imminent, and McNabola told Agee that the answer to its question was no, it could not find fault with RQM without finding Brunswick at fault too. At most, Agee agreed to give McNabola time to maneuver, and she may have had a bias against defendants, but it is not alleged that she knowingly joined McNabola's plan to act to the detriment of Brunswick's constitutional rights. She did not know how the judge was going to react to the question or that unfavorable consequences to Brunswick were inevitable if she did McNabola's bidding. An agreement to violate constitutional rights has not been alleged.

672 F.3d 476, 478 (7th Cir. 2012).[4] This case is in its initial stages, and there is no reason not to follow the presumption that federal courts will relinquish jurisdiction over supplemental state-law claims.

The dismissal of the complaint is without prejudice because ordinarily "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [its] complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

## IV. Conclusion

As currently conceived, this controversy belongs in state court. Defendants' motions to dismiss, [19], [30], [38], are granted. Brunswick's complaint is dismissed without prejudice.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 14, 2017

---

[4] I do not reach the defendants' remaining arguments for dismissal under Rule 12(b)(6) or their alternative motions to stay this case pursuant to the abstention doctrine in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* abstention is a discretionary, prudential doctrine used for judicial economy in exceptional circumstances when parallel state-court and federal-court lawsuits are pending between the same parties. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497–98 (7th Cir. 2011). As a discretionary and prudential doctrine, it is not an issue of subject-matter jurisdiction that must be decided at the outset of a case.

18