UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUNSWICK CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARK MCNABOLA, THE MCNABOLA LAW GROUP, P.C., TATIANA AGEE, and COOK COUNTY,<br><br>　　　　Defendants. | No. 16 CV 11414<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

During deliberations for a personal-injury lawsuit, a state-court jury sent a note to the judge insinuating that it was going to find in favor of the defense (Brunswick). The court clerk called the plaintiff's attorney and disclosed the contents of the note. At the plaintiff's attorney's request, the clerk then delayed calling Brunswick, allowing the lawyer to quickly accept Brunswick's outstanding $25 million settlement offer before it was revoked in light of the jury question. Brunswick now brings federal and state-law claims against the attorney, his law firm, the court clerk, and Cook County as the clerk's employer. Defendants move to dismiss all claims against them. For the following reasons, the motions are granted.

**I.    Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all

factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 678–79.

## II. Background

Scot Vandenberg fell from the top deck of a yacht, rendering him a quadriplegic. [72] ¶ 2.[1] Vandenberg and his wife filed a state-court products-liability lawsuit against Brunswick, the manufacturer of the yacht, and RQM, the owner of the yacht. *Id.* The Vandenbergs retained Mark McNabola from the McNabola Law Group to represent them. *Id.* ¶ 3. They settled their claims against RQM, and their claims against Brunswick proceeded to trial. *Id.* ¶ 5. At trial, the jury learned of RQM's potential culpability through Brunswick's arguments and the line item for RQM on the verdict form (as required under admiralty law). *Id.*

The jury began deliberating on June 9, 2015, at approximately 2:30 p.m. *Id.* ¶ 6. Shortly thereafter, Brunswick's insurer's claims adjuster offered to settle for $25 million. *Id.* McNabola declined. *Id.* At 3:50 p.m., the jury sent a question to the judge, asking whether it "could find fault with RQM without finding fault with Brunswick?" *Id.* ¶ 7. Judge Budzinski, who was presiding over the trial, instructed the court clerk, Tatiana Agee, to call both sides to inform them that there was a jury question and to ask them to come address it. *Id.* Two minutes later, Agee called McNabola and told him the jury's question. *Id.* ¶ 8. McNabola told her the answer

---

[1] Bracketed numbers refer to entries on the district court docket. Brunswick's first amended complaint is [72].

was "no" and asked her to "hold off" on doing anything because he was going to settle the case. *Id*.

McNabola called defense counsel, Patton, three minutes after Agee's call and left a message with his secretary saying that the jury was out. *Id*. ¶ 9. McNabola called Agee again and spoke with her at 4:01 p.m. *Id*. One minute later, McNabola spoke with Patton and confirmed that the jury was deliberating, but did not mention the jury question. *Id*. At 4:03 p.m., McNabola spoke with the claims adjuster and countered the settlement offer, demanding $30 and $27.5 million. *Id*. ¶ 10. When the claims adjuster rejected both of those offers, McNabola offered $25 million, which was accepted. *Id*. The claims adjuster had full authority to revoke the $25 million offer and would have done so had he been aware of the jury question, of McNabola's knowledge of the jury question, or of his request that Agee hold off on a hearing so he could settle the case. *Id*.

Sometime between 4:10 and 4:15 p.m., McNabola called Judge Budzinski to advise her about the settlement, and during that conversation McNabola told her that neither he nor the defense was interested in the jury question or anything more to do with the trial. *Id*. ¶ 11. At this point Agee still had not called Patton or anyone representing the defense to advise them that a jury question was pending. *Id*. A few minutes later, McNabola spoke with Patton to advise him about the settlement. *Id*. ¶ 12.

One minute after McNabola spoke with Patton, Agee called Patton and told him the jury had a question, but did not tell him what it was. *Id*. ¶ 13. Roughly ten

3

minutes later, the attorneys for both sides reconvened in Judge Budzinski's chambers and Judge Budzinski asked why it took so long for them to return after the jury presented its question. *Id.* ¶ 14. One of Brunswick's attorneys replied that they had come as soon as they learned of the question. *Id.* McNabola's associate, who was present, said nothing. *Id.* Judge Budzinski revealed the jury question and put the settlement on the record. *Id.* At the time, neither Judge Budzinski, nor anyone representing the defense knew that McNabola had already known the substance of the jury question, or that he had asked Agee to "hold off" on doing anything. *Id.*

After putting the settlement on the record, Judge Budzinski answered the jury's question by advising it to refer to the jury instructions and then allowed the jury to continue deliberating over McNabola's objection. *Id.* ¶ 15. Within ten minutes, the jury, unaware of the settlement, signed a verdict form in favor of Brunswick. *Id.* After the jury reached its verdict, Patton arrived at the courtroom where he learned that the jury had presented its question 27 minutes before he was called, and he told Judge Budzinski that the settlement had occurred without him knowing that the jury had submitted a question. *Id.* ¶¶ 51–52. Patton and McNabola's associate then went into Judge Budzinski's chambers where Patton learned from Judge Budzinski that McNabola had spoken with Agee about the jury question before settling the case. *Id.* ¶ 53. Judge Budzinski refused to enter a proposed order reflecting that the jury had entered a verdict for the defense. *Id.*

The next morning, Patton emailed Judge Budzinski informing her that he had not been notified about the jury question until after the settlement had been reached and that McNabola had called him at 3:55 p.m. to negotiate a settlement. *Id*. ¶ 54. Brunswick filed a Motion for an Evidentiary Hearing to examine Agee and McNabola under oath and a Motion to Vacate the Settlement Agreement and Enter Judgment on the Jury Verdict. *Id*. ¶¶ 55–56. A few days later, Judge Budzinski entered a Memorandum on the docket disclosing that McNabola had told her that since the case was settled, neither party was interested in the contents of the jury note. *Id*. ¶ 57. The Memorandum noted that Agee claimed she had not disclosed the contents of the jury note to McNabola, that she had called the parties at the same time, and that McNabola had asked her to "hold off." *Id*. But it also stated that one of Judge Budzinski's externs overheard Agee reveal the contents of the jury question to McNabola and that McNabola had suggested that the answer should be "no." *Id*. The same day, Judge Budzinski entered a protective order prohibiting any of the parties from speaking with court staff. *Id*. ¶ 58. The McNabola Law Group responded to Brunswick's Motion to Vacate the Settlement Agreement, indicating that McNabola spoke with Agee on the phone at approximately 3:50 to 3:55 p.m. and that she advised him that the jury had sent a question. *Id*. ¶ 59. It did not include any other details about the call. *Id*.

Judge Budzinski recused herself from the case and the matter was transferred to Judge Daniel Lynch in August 2015. *Id*. ¶ 61. Judge Lynch granted Brunswick's Motion for an Evidentiary Hearing and its request to subpoena phone

5

records for Judge Budzinski's chambers and McNabola for June 9 and 10, 2015 (though Brunswick only received records of Agee's line for June 9). *Id.* ¶ 62. Brunswick later received phone records for McNabola's associate for the same dates. *Id.*

The evidentiary hearing lasted for four days and Patton, Agee, the extern, and McNabola, among others, testified. *Id.* ¶ 64. At the hearing, McNabola acknowledged for the first time that Agee told him the jury's question and that he had asked her to delay a conference on the note. *Id.* ¶ 65. Agee denied that she had ever even seen the note and denied disclosing the contents of the question to McNabola. *Id.* ¶ 83. She also claimed that she called both sides at the same time, which the phone records refuted and Judge Lynch rejected as not credible. *Id.* Agee further testified that any delay in calling Patton occurred because she assisted a docket clerk with a filing, but the docket clerk's testimony and security records refuted this explanation. *Id.* ¶ 84. Agee and McNabola both testified that they had spoken with each other in the weeks following the incident. *Id.* ¶ 69. The extern confirmed her earlier account and added that after Agee hung up the phone with McNabola, Agee told her that she disclosed the contents of the jury question because she liked "to give the plaintiffs . . . a little more of an opportunity to kind of settle or figure this out before the defense" and to "give the plaintiffs an advantage." *Id.* ¶ 71.

Judge Lynch issued an oral ruling in January 2016, vacating the settlement based on fraud in the inducement and unilateral mistake. *Id.* ¶ 86. He also

6

reconstituted the jury to confirm it had reached a unanimous verdict and to have the jurors polled. *Id*. ¶¶ 92–93. Afterward, Judge Lynch requested that the parties file supplemental briefs regarding Brunswick's request to enter judgment on the jury verdict. *Id*. ¶ 98. After the Vandenbergs obtained new counsel, Judge Lynch held oral argument on the supplemental briefing and on the Vandenbergs' request to enforce the settlement agreement. *Id*. ¶¶ 99, 103. McNabola filed a petition to intervene, which was denied. *Id*. ¶ 106. Judge Lynch entered judgment on the jury's verdict in May 2016, and then recused himself from the matter without explanation. *Id*. ¶¶ 107, 110.

After the case was reassigned to Judge O'Hara, the Vandenbergs raised the same arguments that Judge Lynch had rejected and in December 2016, Judge O'Hara entered an order finding the settlement enforceable and vacating all previous orders inconsistent with that finding. *Id*. ¶¶ 111–13. The order did not mention the testimony or evidence elicited, or the factual findings or credibility determinations made during the four-day evidentiary hearing. *Id*. The Illinois Appellate Court affirmed Judge O'Hara's findings, and Brunswick's petition to the Illinois Supreme Court was denied. [94-1], [98-1].

While the state proceedings were still ongoing, Brunswick filed this lawsuit in federal court against McNabola, McNabola Law Group, Agee, and Cook County on December 16, 2016. Brunswick alleged that Agee violated its due process rights and conspired with McNabola to do the same. Brunswick also brought state-law claims for negligence, civil fraud, and civil conspiracy against Agee, McNabola, and

7

the McNabola Law Group and alleged that Cook County was liable for Agee's conduct based on respondeat superior and as an indemnifier. The defendants filed motions to dismiss, those motions were granted, and Brunswick was granted leave to replead its claims. Brunswick filed its first amended complaint and defendants again move to dismiss.

## III. Analysis

In its original complaint, Brunswick alleged that Agee interfered with its protected interest in a fair trial. As discussed in the previous opinion, *Brunswick Corp. v. McNabola*, No. 16 CV 11414, 2017 WL 3008279 (N.D. Ill. July 14, 2017), while a fair trial is necessary to protect a plaintiff from being deprived of its property without due process, it is not a property interest in and of itself. Brunswick also failed to allege that the state-court post-deprivation proceedings and other state-law remedies did not adequately afford it due process. Brunswick's amended complaint is similar to its original complaint, though Brunswick now alleges that its protected interest is the jury verdict, denial of which led to a $25 million settlement and one million dollars in litigation expenses. It further alleges that the state-court remedies are inadequate because defendants' egregious misconduct led to a complete breakdown of judicial protocol and because Judge O'Hara's order vacated all previous orders, rendering the prior proceedings meaningless. For the reasons discussed below, Brunswick has failed to fix the defects in its complaint.

## A.  Protected Property Interest

To state a due-process claim a plaintiff must allege that a state actor deprived it of a constitutionally protected liberty or property interest without due process of law. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002). To do so, a plaintiff must show: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). Property interests are not created by the Constitution—they are defined by independent sources, such as state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

Brunswick alleges that by disclosing the contents of the jury question to McNabola and not to Brunswick, Agee denied Brunswick its protected property interest in the jury verdict, denial of which led to a $25 million dollar settlement and over one million dollars in legal fees and expenses. Brunswick reasons that a jury verdict is a judgment, and a judgment is a protected property interest. This is incorrect. A final judgment—one that is no longer subject to review or modification—is a property interest protectable by due process. *Evans v. City of Chicago*, 689 F.2d 1286, 1296 (7th Cir. 1982). But a jury verdict is not. A jury's verdict is the basis upon which a judgment may be entered. *See People ex rel. Wakefield v. Montgomery*, 365 Ill. 478, 480 (1937). It is not a judgment,[2] and it is

---

[2] In support for its contention that a jury verdict is a judgment, Brunswick relies on *Sampson v. Yellow Cab*, 55 F.Supp.2d 867, 871 (N.D. Ill. 1999), which states, "the state court jury verdict is a judgment on the merits that must be given preclusive effect, and the state appellate court's affirmance of this verdict likewise amounts to a final judgment on the merits." Though the court refers to the jury verdict, presumably a final judgment was entered based on that verdict. This case does not support Brunswick's contention that a

9

certainly not a judgment that is no longer subject to review or modification. Brunswick does not have a protected property interest in the jury's verdict and so it has failed to allege a due-process claim for Agee's interference with that verdict.

B. **State-Law Remedies**

Even assuming Brunswick had a protected interest in the jury's verdict, it has not shown that it was deprived of that interest without due process of law. Due process guarantees "the opportunity to be heard at a meaningful time and in a meaningful matter." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996). Due process is not a "technical conception with a fixed content unrelated to time, place and circumstances"—instead the procedures required depend on the particular situation. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). For instance, when a state employee's conduct is random and unauthorized, pre-deprivation process is not practicable and so meaningful post-deprivation proceedings are sufficient to protect one's due-process rights. *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). Agee's actions here were random and unauthorized, so to state a due-process claim Brunswick must allege that its post-deprivation remedies were inadequate. State-court proceedings are inadequate only if they "are meaningless or nonexistent." *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990).

In arguing that the state-court proceedings were inadequate, Brunswick asserts that "Defendants' misconduct was so egregious so as to render any state

---

jury verdict unsupported by a subsequent judgment is a final judgment. Nor does it stand for the proposition that a jury verdict is a protected property interest for due-process purposes.

10

remedies meaningless and thus inadequate." [72] ¶ 126. Brunswick also alleges that "Defendants' conduct led to a breakdown of judicial protocol" and that Judge O'Hara's December 20, 2016 order rendered the prior proceedings "essentially meaningless." *Id.* But its factual allegations do not support these contentions. Brunswick pursued state-court post-trial relief from the time the misconduct occurred in June 2015, through March 2018, when its petition to the Illinois Supreme Court was denied. Nothing in Brunswick's complaint indicates that these proceedings were not meaningful or failed to give Brunswick an opportunity to be heard. At this point, Agee could no longer corrupt the process. The December 20 order may have overturned Brunswick's short-lived success, but that is a natural outcome of the litigation process and occurs any time a court's decision is reconsidered or appealed. It does not render the prior proceedings meaningless, nor does it infringe on a litigant's due-process rights. And even if, as Brunswick alleges, Judge O'Hara's order failed to properly take into account earlier evidentiary findings, Brunswick had the opportunity to raise any concerns with that order to the Illinois Appellate Court. Brunswick has alleged no facts indicating that the state-court proceedings were meaningless.

Brunswick also argues that any relief awarded in state court would be inadequate because there it sought only equitable relief, whereas it seeks damages in this federal lawsuit. But in cases where the state action is random and unauthorized, the post-deprivation remedy need not be identical to the remedy available under § 1983 to be adequate. *Simpson v. Brown Cty.*, 860 F.3d 1001,

1010–11 (7th Cir. 2017). For example, state tort claims that, unlike § 1983 claims, do not allow for actions against individual state employees, authorize punitive damages, or allow for a trial by jury may still satisfy due process if the "remedies provided could have fully compensated the [plaintiff] for the property loss he suffered." *See Parratt*, 451 U.S. at 543–44. The property Brunswick alleges it lost is its interest in the jury verdict, which in turn caused it to lose $25 million plus litigation expenses. Throughout the state-court post-trial proceedings in the Circuit Court and on appeal Brunswick argued that the settlement was invalid and that the jury's verdict should stand. Had Brunswick prevailed, the $25 million settlement would have been vacated and Brunswick would have been fully compensated for its property loss. The state courts provided Brunswick with adequate process. That Brunswick could not also have recovered its attorneys' fees does not render the state court proceedings inadequate. *Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002).

Brunswick has again failed to allege both a protected property interest and that the state-court proceedings were inadequate. After two attempts, Brunswick has failed to state a viable due-process claim. Because continued efforts would be futile, Count I is dismissed with prejudice.

C. **Remaining Claims**

In addition to its due-process claim against Agee, Brunswick also alleges that McNabola conspired with Agee to deprive it of its interest in the jury verdict without due process. Because conspiracy is not an independent basis of liability in

§ 1983 actions, and because Brunswick failed to allege an underlying civil rights violation to support its § 1983 conspiracy claim, Brunswick's conspiracy claim (Count II) also fails. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). With Brunswick's federal claims dismissed, only its state-law claims remain. There is no diversity jurisdiction, and I relinquish jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3); *Al's Serv. Ctr. v. BP Prods. N. America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

## IV.  Conclusion

Defendants' motions to dismiss, [79], [81], and [82], are granted. Brunswick's state-law claims are dismissed without prejudice. Its federal claims are dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Manish S. Shah
United States District Judge

Date: April 10, 2018

13